UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CHAMBERS, individually and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br><br>-against-<br><br>MAPLEBEAR, INC. (d/b/a INSTACART),<br><br>                           Defendant. | 21-CV-7114 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

       Plaintiff, a driver for the web-based delivery platform Instacart, brings this putative class action suit alleging that Instacart misclassified him and other drivers as independent contractors rather than employees. Instacart moves to compel arbitration pursuant to an arbitration clause in its contract with Plaintiff. There is no dispute that the arbitration agreement is valid and applies to Plaintiff's claims. Instead, Plaintiff argues that he qualifies for the "transportation worker" exception to the Federal Arbitration Act, which exempts a class of workers from the Act's mandatory arbitration regime if the class is "engaged in interstate commerce." Multiple courts have concluded that Instacart delivery drivers do not qualify for this exception, finding that although Instacart delivery drivers transport goods that have previously crossed state lines, they merely transport the goods *intrastate* from the finish of the goods' interstate journey (at a retail store) to the customer. Plaintiff provides no compelling reason for a different outcome here. Accordingly, the motion to compel arbitration is GRANTED and the case is STAYED pending arbitration. However, because this motion involves a controlling question of law that is unsettled in the Second Circuit, and an immediate appeal may materially advance the ultimate termination of the litigation, the Court CERTIFIES this Order for interlocutory appeal.

## BACKGROUND

Plaintiff brings this putative class action suit alleging that Defendant misclassified him and other New York Instacart drivers as independent contractors rather than employees of Instacart under New York law. ECF No. 1 ("Compl.") ¶ 2.

Instacart operates a nationwide delivery service for groceries and a variety of non-food items. ECF No. 19 ("Son Decl.") ¶ 2; Compl. ¶¶ 8–9 . Customers use the Instacart platform to connect with a local "Shopper," who shops for and delivers groceries and other items. Son Decl. ¶ 3. "Instacart facilitates local delivery of goods stocked on the shelves of local retailers or warehouses for later resale." ECF No. 25 at 6–7. Instacart "Shoppers" – delivery drivers like Plaintiff Chambers – deliver goods to Instacart's customers at their homes or businesses. ECF No. 24-1 ("Liss-Riordan Decl.") Ex. 1. Customers select a delivery window (which can be same day) and schedule a delivery from one of Instacart's delivery drivers, who may shop for and deliver the order or simply pick up the order from the store and deliver it to the customer. *Id*.; Compl. ¶¶ 8–9. Instacart does not play a role in how goods arrive at local stores or warehouses. Son Decl. ¶ 4. On average, from 2018 through 2021, 99.8% of all Instacart Shopper deliveries were entirely intrastate. ECF No. 20 ("Tonti Decl.") ¶ 7.

To become a Shopper on Instacart's platform, applicants must sign a contract that includes a "scrollwrap"-type agreement to arbitrate disputes arising from a Shopper's relationship with Instacart and use of its platform. Son Decl. ¶ 7. Plaintiff signed such an agreement in September 2019, which provides that "the Parties agree that to the fullest extent permitted by law, ANY AND ALL DISPUTES OR CLAIMS BETWEEN YOU AND INSTACART shall be exclusively resolved by final and binding arbitration by a neutral arbitrator, including without limitation any and all disputes or claims BETWEEN YOU AND

INSTACART . . . ." Son Decl. Ex. B (the "Agreement") ¶ 8.1. The Agreement provides that it is governed by the FAA, *id.*, and contains a class action waiver, *id*. ¶¶ 8.4–8.5. Plaintiff signed updated versions of Instacart's Agreement in January and December 2020 and there is no indication that he ever opted out of the arbitration provisions of any of the Agreements he signed. Son Decl. ¶¶ 13, 17.

Pending before the Court is Defendant's motion to compel arbitration. ECF No. 17.

## LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up). Under Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA provides that parties can petition a district court for an order compelling arbitration. 9 U.S.C. § 4. The role of the courts is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)).

In considering a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment," deciding whether there is an issue of fact as to the making of the agreement to arbitrate based on "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up). "[T]he party resisting arbitration bears the burden of proving that the claims at

issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). It may not satisfy this burden through "general denials of the facts on which the right to arbitration depends . . . but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## DISCUSSION

There is no dispute that a valid arbitration agreement applies to Plaintiff's claims. The instant motion hinges on whether Plaintiff belongs to a class that falls within the "transportation worker" exception to the FAA. Multiple courts have concluded that Instacart Shoppers do not qualify as exempt transportation workers under Section 1 of the FAA, finding that Instacart Shoppers are not themselves actively engaged in transportation of goods in interstate commerce; instead, there is a break in the chain of the channels of interstate commerce when the goods are delivered to the retail store. These decisions have concluded that the subsequent and entirely independent transaction in which Instacart Shoppers pick up and deliver the goods to Instacart customers did not play a direct and necessary role in the interstate flow of goods so as to bring Instacart Shoppers within the ambit of the transportation worker exemption. The logic of those decisions applies here, and Plaintiff provides no compelling reason for a different outcome. Accordingly, the motion to compel arbitration is GRANTED and the case is STAYED. However, because this motion involves a controlling question of law that is unsettled in the Second Circuit, and an immediate appeal may materially advance the ultimate termination of the litigation, the Court CERTIFIES this Order for interlocutory appeal.

### I. There Is No Dispute That a Valid Arbitration Agreement Exists

"Although no party disputes this issue, the Court first addresses whether a valid arbitration agreement exists." *New York Knicks, LLC v. Maple Leaf Sports & Ent. Ltd.*, No. 23-

CV-7394 (JGLC), 2024 WL 3237563, at *4 (S.D.N.Y. June 28, 2024) (internal citation omitted). Plaintiff Chambers agreed by contract to arbitrate "any and all disputes or claims between [Chambers] and Instacart," and agreed that "this Agreement shall be governed by the Federal Arbitration Act." Agreement ¶ 8.1. Plaintiff signed versions of Instacart's Agreement in September 2019, January 2020, and December 2020 and did not opt-out of the arbitration provisions. Although Plaintiff contests the enforceability of the class waiver in the arbitration clause under New York law, *see* ECF No. 24 at 13–17, it is undisputed that he agreed to arbitrate his claims against Instacart. The Court is satisfied that the arbitration clause in the Agreement represents a valid agreement to arbitrate.

## II. The FAA's Transportation Worker Exemption Does Not Apply

Plaintiff invokes Section 1 of the FAA, commonly known as the "transportation worker" exemption, which excepts from the statute's ambit "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). Plaintiff argues that Instacart Shoppers are a "class of workers engaged in foreign or interstate commerce" exempt from the FAA. 9 U.S.C. § 1; ECF No. 24 at 5–12. The Court considers whether the FAA's transportation worker exclusion applies before compelling arbitration. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019).

The term "contracts of employment" in Section 1 of the FAA applies to "agreements to perform work," including those of independent contractors. *Id.* at 112–21. "Accordingly, the distinction between employees and independent contractors matters not for the threshold question of the FAA's applicability, regardless of its centrality to the underlying dispute." *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 250 (1st Cir. 2021) (citing *Waithaka v. Amazon.com, Inc.*,

966 F.3d 10, 17 (1st Cir. 2020)). No party disputes that the contracts at issue here are "contracts of employment."

The instant motion hinges on whether Plaintiff is part of a class of workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. "[The Court] begin[s] by defining the relevant 'class of workers' to which [Plaintiff] belongs. Then, [the Court] determine[s] whether that class of workers is 'engaged in foreign or interstate commerce.'" *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). The relevant "class of workers" to which Plaintiff belongs is based on the work actually performed. *Id*. at 456 (explaining that the relevant inquiry was what the plaintiff does at Southwest, not what Southwest does generally"); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 254 (2024) (internal citation and quotation marks omitted) (explaining that the language of Section 1 "focuses on the performance of work rather than the industry of the employer"). In this case, Plaintiff belongs to a nationwide class of Instacart shoppers who shop for and deliver groceries and other goods from local retailers or warehouses[1] to local consumers. *See* ECF No. 60-1, *Burns v. Maplebear, Inc.*, No. 24-CV-4618 (JCD) (N.D. Ill. Aug. 7, 2024) at 4 n.3 ("The Court agrees with Instacart that, in determining the 'class of workers' to which the plaintiff belongs, the assessment should be made at the nationwide level, rather than any narrow, geographic region."); *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 350 (S.D.N.Y. 2021) ("The Court will accordingly assume for purposes of deciding this motion that the relevant class of workers to which Plaintiff belongs is the nationwide class of rideshare drivers for national companies that operate in a manner similar to Lyft and Uber.").

---

[1] It is not evident from the factual record before the Court the extent to which Instacart Shoppers make pickups from warehouses as opposed to retail stores. *See* ECF No. 25 at 6–7 ("Instacart facilitates local delivery of goods stocked on the shelves of local retailers or warehouses for later resale.").

The crux of this motion is whether Instacart Shoppers are engaged in interstate commerce under Section 1 of the FAA. An exempt transportation worker need not actually cross state lines but must be:

> actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce. In other words, any exempt worker must at least play a direct and necessary role in the free flow of goods across borders. These requirements undermine any attempt to give the provision a sweeping, open-ended construction, instead limiting § 1 to its appropriately narrow scope.

*Bissonnette*, 601 U.S. at 256 (cleaned up).

In *Saxon*, the Supreme Court found that a class of workers who physically load and unload cargo on and off airplanes were exempt transportation workers because they plainly performed "activities within the flow of interstate commerce when they handle goods traveling in interstate and foreign commerce, either to load them for air travel or to unload them when they arrive." 596 U.S. at 463 (internal citation and quotation marks omitted). In determining whether a class of workers is engaged in interstate commerce, courts have considered whether the class's work forms part of a single, unbroken stream of interstate commerce or whether interstate travel or commerce is a central or typical part of the job. *See Aleksanian v. Uber Techs. Inc.*, No. 22-98-CV, 2023 WL 7537627, at *2 n.3 (2d Cir. Nov. 14, 2023) (collecting cases). These considerations are in harmony with *Saxon*, which "teaches that the pivotal inquiry under Section 1 is whether the [workers] are 'far more removed from interstate commerce,' or instead perform 'activities within its flow.'" *Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 264 (E.D.N.Y. 2023) (quoting *Saxon*, 596 U.S. at 462); *Saxon*, 596 U.S. at 462 (distinguishing cases in which workers merely supplied "localized [ ] services to a corporation engaged in interstate commerce."). Unlike for the clearly exempt class of airplane cargo loaders in *Saxon*, "the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." 596 U.S. at 462 n.2.

Three courts have previously found that Instacart Shoppers do not qualify as exempt transportation workers under Section 1 of the FAA. *See Burns v. Maplebear, Inc.*, No. 24-CV-4618 (JCD) (N.D. Ill. Aug. 7, 2024) ("*Burns*"); *Levine v. Maplebear, Inc.*, No. 21-CV-11617-AK, 2022 WL 827290 (D. Mass. Mar. 18, 2022); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 282 (N.D. Ill. 2020). Another court found the same with respect to a similar class of delivery workers for a competitor of Instacart. *See Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 838 (N.D. Ill. 2021) (internal citation omitted) ("Like Shipt, Instacart facilitates same-day, on-demand grocery shopping and delivery services in Illinois."). Based on the record before it, this Court reaches the same conclusion.

In *Burns*, the court considered undisputed evidence – akin to the record in this case – that approximately 99.6% of Instacart orders in the United States were intrastate. *Burns* at 4. Applying the Seventh Circuit's holding – that "to fall within the [transportation worker] exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders," *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) – the court found that Instacart Shoppers lacked the requisite direct connection to interstate commerce, *Burns* at 5. The court distinguished the Ninth Circuit's decision in *Rittmann* and the First Circuit's decision in *Waithaka*, which both found that certain delivery workers employed by Amazon qualified for the Section 1 exemption because of their role in the "last leg" or "last mile" of the packages' interstate journeys. *Burns* at 5 (citing *Waithaka*, 966 F.3d at 10 and *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020)). Instead, the court found that "[u]nlike goods awaiting departure at an Amazon warehouse fulfillment center or an outbound plane, the goods handled by Instacart shoppers are not part of a continuous flow of commerce. Their interstate journey ended once they reached the shelves of

the local retailer . . . In other words, the interstate transactions between the supplier and local retailer are separate and distinct from the intrastate deliveries between Instacart shoppers and consumers." *Id*. (internal citations omitted). Moreover, the court found "[t]he fact the goods once moved through interstate commerce is not enough to bring Instacart shoppers within the exemption either." *Id*. (internal citation omitted). Thus, the court concluded that "[b]ecause Instacart shoppers do not play 'a direct and necessary role in the free flow of goods across borders,' they do not fall under § 1's residual clause and, thus, the transportation worker exemption does not apply." *Id*. (quoting *Bissonnette*, 601 U.S. at 256).

*O'Shea* and *Young* also applied the Seventh Circuit decision in *Wallace* to reach the same result. Like *Burns*, *O'Shea* distinguished the Amazon delivery worker cases, reasoning that "not every worker who transports goods in connection with an interstate transaction is also 'actively engaged in the enterprise of moving goods across interstate lines.'" *O'Shea*, 508 F. Supp. 3d at 288 (quoting *Wallace*, 970 F.3d at 802). The court found that if "Section 1 exempted all those who move goods as a 'component of a larger series of Internet transactions,' it would encompass any number of workers, including, for example, a local pizza delivery driver dispatched after a customer places an online order—and the consensus among courts is that pizza (and other local food) delivery drivers do not fall within the Section 1 exemption." *Id*. (collecting cases). The court found Instacart Shoppers comparable to the non-exempt Grubhub delivery drivers in *Wallace*, finding that "drivers who deliver food purchased over the internet from a grocery store differ in no material way from drivers who pick up food purchased over the web from a restaurant . . . ." *Id*. at 287.

*Young* reached the same conclusion, finding that "[t]he class of [Instacart] Shoppers are not directly engaged *in the channels* of foreign or interstate commerce, even when they transport

9

goods that have crossed state lines." *Young*, 563 F. Supp. 3d at 838. The court also distinguished the Amazon delivery worker cases, finding that "from the moment these goods entered 'the flow of interstate commerce,' they already were 'destined for' the customers to whom the Amazon Flex drivers made deliveries" whereas "[t]here is a break in the channels of commerce between the transportation of goods to a local retail store and the subsequent local purchases from that store by Shipt customers." *Id*. at 839 (quoting *Waithaka*, 966 F.3d at 20). In other words, the court found that "the flow in interstate commerce has ceased when the goods are delivered to the retail store, and the goods have come to a permanent rest within the state." *Id*. at 839 (quoting *Rittmann*, 971 F.3d at 916). That "drivers carry goods that have *already* moved across state lines at some earlier time" did not bring Instacart Shoppers within the ambit of the transportation worker exemption. *Id*. at 838.

*Levine* reached the same conclusion. *Levine* applied the First Circuit's decision in *Cunningham*, which held that Lyft drivers were not within the ambit of the transportation worker exception in part because Lyft and its drivers are not involved in arranging for the movement of goods or people across state lines. *Levine*, 2022 WL 827290, at *3 (citing *Cunningham*, 17 F.4th at 250). The court found that "Instacart does not contract for or control the interstate journey of the goods that drivers deliver locally; rather, the suppliers, distributors, grocery stores, and merchants facilitate the interstate journey of the goods. Instacart drivers merely contract with customers as 'part of the driver's normal local service' to take goods 'from the finish of the goods' interstate journey' to the Instacart customer." *Id*. (citing same). The court distinguished the Amazon delivery worker cases – where the "last-mile" or "last-leg" deliveries were part of a

single interstate journey arranged by Amazon[2] – finding that there was no evidence of any agreements between Instacart and any supplier, distributor, or merchant of goods. *Id*. at *4.

There is also no evidence in the record that Instacart contracts with any supplier, distributor, or merchant of goods to create the "integrated interstate transport effect" that some courts have considered when assessing whether Uber and Lyft drivers fall within the transportation worker exception. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 562 (3d Cir. 2023) (citing *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947))*; Cunningham*, 17 F.4th at 250–51 (1st Cir. 2021) (citing same); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–64 (9th Cir. 2021) (citing same); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 19–20 (D.D.C. 2021) (citing same). The record does not indicate that Instacart plays a role in interstate commerce akin to a taxi company contracting with a railroad or airport to provide an intrastate leg of transit in an interstate journey.

Because the *Burns*, *Levine*, *O'Shea*, and *Young* courts found that the transportation worker exception did not apply, the courts compelled individual arbitration pursuant to the FAA. *Levine*, 2022 WL 827290, at *5; *Burns* at 7; *Young*, 563 F. Supp. 3d at 839; *O'Shea*, 508 F. Supp. 3d at 289. Plaintiff provides no compelling reason for a different outcome here. *Saxon* and *Bissonnette* do not change the analysis. Those cases merely confirmed that the relevant inquiry for the transportation worker exception focuses on the work actually performed by the workers, rather than the industry in which their employer operates. These holdings do not disturb the

---

[2] It appears likely that some portion of Amazon packages is brought to in-state warehouses without a specific customer in mind, then later delivered pursuant to same-day or next-day orders. *See* ECF No. 24 at 8. However, the case law finding Amazon delivery drivers to be exempt transportation workers does not appear to address this aspect of Amazon's business model, and there is no evidence in the present record that Instacart Shopper pickups and deliveries from warehouses operate in a similar fashion to those from Amazon warehouses. And Plaintiff does not dispute that Instacart does not play a role in how goods arrive at local stores or warehouses. *See* Son Decl. ¶ 4.

conclusions of *Levine*, *O'Shea*, and *Young*, as the recent decision in *Burns* illustrates. The Amazon delivery worker and "last-mile/last-leg" cases remain distinguishable for the same reasons articulated in *Burns*, *Levine*, *O'Shea*, and *Young*.

Plaintiff attempts to distinguish adverse cases concerning takeout delivery food drivers (such as *Wallace*) on the basis that, unlike here, the out-of-state ingredients were transformed or reconstituted into locally prepared meals, which broke the chain of interstate commerce. ECF No. 24 at 9–10. Regardless of the merits of this distinction, *see Young*, 563 F. Supp. 3d at 838 (citing *Wallace*, 970 F.3d at 802) ("[W]hether the goods are perishable or not makes no difference."), Plaintiff does not refute courts' conclusion that delivery of goods to the in-state destinations breaks the chain of interstate commerce. That conclusion followed because the interstate transaction between the supplier and the local retailer was entirely distinct from intrastate deliveries between the local retailers and the consumers. *Burns* at 5; *O'Shea*, 508 F. Supp. 3d at 288; *Young*, 563 F. Supp. 3d at 839; *Levine*, 2022 WL 827290, at *3. Based on the record, the same is true here.

Plaintiff also points to a now-overturned Massachusetts state court case that found that Grubhub delivery drivers were exempt transportation workers. ECF No. 24 at 11 (citing *Archer v. GrubHub, Inc.*, No. 1984-CV-3277BLS1, 2021 WL 832132, at *7 (Mass. Super. Jan. 13, 2021), *rev'd and remanded*, 190 N.E.3d 1024 (Mass. 2022)). In that case, the court reasoned that "the ultimate customers for whom . . . those items are intended are the GrubHub customers who consumed or used them" with respect to pre-packaged and non-food items delivered by GrubHub drivers. *Id*. (internal citation and marks quotation omitted).

The Supreme Judicial Court of Massachusetts, however, reversed the Superior Court. It found that:

> [A]t the moment the goods at issue here entered the flow of interstate commerce, the destination was not the address of the Grubhub customer ordering the takeout food or convenience items for delivery. At most, the goods were destined for the local restaurants, delicatessens, and convenience stores that ordered them. Any subsequent journey taken by the goods in the hands of the Grubhub drivers, as part of the takeout meal, was not part of the ongoing and continuous interstate transmission of these goods.

*Archer v. Grubhub, Inc.*, 190 N.E.3d 1024, 1032–33 (Mass. 2022). In accord with the Seventh Circuit's reasoning from *Wallace*, the court concluded that the Grubhub drivers "transported goods that had already completed the interstate journey by the time the goods arrived at the restaurant, delicatessen, or convenience store to which they were sent; as such, the plaintiffs are dissimilar to the railroad workers, seamen, or the other limited, interstate class of workers contemplated by Congress when enacting § 1 of the FAA." *Id*. at 1033. The court also distinguished the "last-mile driver" cases for the same reasons already discussed. *Id*. at 1032. This Court finds the higher court decision in *Archer* more persuasive than the overturned lower court decision. Moreover, the higher court decision in *Archer* accords with the well-reasoned decisions in *Burns*, *Levine*, *O'Shea*, and *Young*.[3]

The present record does not provide a basis to find that Plaintiff belongs to a class of workers who are "actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce" and "play a direct and necessary role in the free flow of goods across borders." *Bissonnette*, 601 U.S. at 256 (cleaned up). Thus, for substantially the same reasons as those stated in *Burns*, *Levine*, *O'Shea*, and *Young*, the Court finds, for purposes of the instant motion, that Instacart Shoppers are <u>not</u> exempt transportation workers under Section 1 of the FAA.

---

[3] *Archer* also accords with the subsequent First Circuit decision in a similar case regarding Postmates delivery drivers. *See Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022).

13

## III. The FAA Requires Plaintiff to Arbitrate His Claims on an Individual Basis

"The FAA requires courts to 'enforce arbitration agreements according to their terms,' including terms specifying 'with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.' This mandate includes enforcing terms reflecting the parties' intention 'to use individualized rather than class or collective action procedures.'" *O'Shea*, 508 F. Supp. 3d at 289 (quoting *Epic Sys. Corp. Jacob Lewis Ernst & Young Stephen Morris Nat'l Lab. Rels. Bd. v. Murphy Oil USA*, 584 U.S. 497, 506 (2018)). The contract here states that "[b]y signing this Agreement, Instacart and you agree that each may bring and pursue claims against the other only in their individual capacities, and may not bring, pursue or act as a plaintiff, class representative, or class member in any purported class or collective proceeding or action other than on an individual basis and only except to the extent this provision is unenforceable as a matter of law." Agreement ¶ 8.4, *see also id*. ¶ 8.5. Thus, Plaintiff must submit the claims in the Complaint to arbitration on an individual basis pursuant to the FAA. *See Levine*, 2022 WL 827290, at *5; *Burns* at 7; *Young*, 563 F. Supp. 3d at 839; *O'Shea*, 508 F. Supp. 3d at 289; *Epic Sys.*, 584 U.S. at 502–03 (upholding validity of class waiver under the FAA); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (finding that the FAA preempts state law barring enforcement of a class-arbitration waiver).

Because the Court compels arbitration pursuant to the FAA, it need not analyze whether New York law requires the same.

## IV. The Court Certifies This Order for Interlocutory Appeal

Plaintiff asks the Court to certify an appeal from this interlocutory order compelling arbitration. ECF No. 24 at 20–22. "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a

14

controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order." 28 U.S.C. § 1292(b). The Court is satisfied that this Order meets the criteria set out in Section 1292(b), and accordingly will certify the Order for interlocutory appeal. Although the Second Circuit may address any issue included in this Order, the Court identifies the following question as potentially appropriate for resolution by the Second Circuit:

> Does a worker who shops for and delivers groceries and other goods from local retailers or warehouses to local consumers belong to a "class of workers engaged in . . . interstate commerce," 9 U.S.C. § 1, such that the FAA is inapplicable to the worker's contract?

With respect to the 28 U.S.C. § 1292(b) statutory requirements, this Order involves a controlling question of law as to which there is substantial ground for difference of opinion. The scope of the FAA's transportation worker exemption is "a hotly contested issue across the country . . . ." *Silva v. Schmidt Baking Distribution, LLC*, No. 23-CV-01695 (MPS), 2024 WL 3566168, at *3 (D. Conn. July 29, 2024) (internal quotation marks omitted). Courts in this District have found that certain gig economy workers qualify for the transportation worker exemption. *See Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 356 (S.D.N.Y. 2021) ("[T]he Court concludes that the national class of rideshare drivers for companies like Lyft and Uber are transportation workers engaged in interstate commerce and therefore that they are exempt from being compelled to arbitrate under Section One of the FAA . . . ."); *Haider v. Lyft, Inc.*, No. 20-CV-2997 (AJN), 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021) (finding that Lyft drivers fall within the FAA's exemption for contracts of employment of transportation workers). The Second Circuit has not directly opined on how to determine whether a class of workers is engaged in interstate commerce for purposes of Section 1 of the FAA. *See Aleksanian v. Uber Techs. Inc.*,

No. 22-98-CV, 2023 WL 7537627, at *2 n.3 (2d Cir. Nov. 14, 2023) (collecting cases). The Second Circuit has also not addressed the narrower question identified above, or similar questions such as "whether rideshare drivers fall under the transportation-worker exemption of 9 U.S.C. § 1." *Islam v. Lyft, Inc.*, No. 20-CV-3004 (RA), 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021). The Circuit has not yet issued a new decision in *Bissonnette* following the Supreme Court's reversal and remand. In sum, the Second Circuit has not yet "clearly established a framework for examining issues of the type discussed here." *Levine*, 2022 WL 827290, at *5. For the foregoing reasons, and because the instant application of the transportation worker exception is "an issue of first impression for the Second Circuit . . . , it satisfies the 'substantial ground for difference of opinion' prong of § 1292(b)." *Silva*, 2024 WL 3566168, at *3.

      Finally, the Court finds that an interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate under the FAA, it may save the parties "the expense and burden of arbitration, and allow the case to proceed to resolution in district court." *Islam*, 2021 WL 2651653, at *5; *see also Silva*, 2024 WL 3566168, at *4–5. Litigation involving gig economy workers and delivery drivers is ubiquitous, and the legal questions raised by Instacart's motion to compel arbitration have arisen frequently in district courts, including in this Circuit. *See Islam*, 2021 WL 2651653, at *5. An interlocutory appeal "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), and would certainly, in the Court's view, "conserve judicial resources in the longer term by resolving important and oft-arising legal questions." *Islam*, 2021 WL 2651653, at *5; *see also Silva*, 2024 WL 3566168, at *5 (certifying interlocutory appeal where "it is plausible that the Second Circuit might issue a

new rule regarding this question" and the issue presented had "significant precedential value for workers across the country").

## CONCLUSION

For the reasons stated herein, Defendant's motion to compel arbitration is GRANTED and this action is STAYED.

For the reasons stated in Section IV, this Order is certified for interlocutory appeal. The parties have **10 days** to file a notice of appeal. 28 U.S.C § 1292(b).

While this action is stayed, the parties are ordered to submit a joint status update **every 60 days from the date of this Order**.

The Clerk of Court is directed to STAY the case and to terminate ECF Nos. 17 and 21.

Dated: August 27, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge